DEPARTMENT OF FINANCIAL INSTITUTIONS *v.* UNION
BANK AND TRUST COMPANY, TRUSTEE.

[No. 26,841.  Filed May 17, 1937.]

Lee M. Bowers, for appellant.

C. H. Wills, Elliott & Fell, and McClure & Shank, for appellee.

HUGHES, J.—It appears from the record and briefs in this action that on or about the 8th day of March, 1929, Citizens State Bank of Huntington was appointed and qualified in the Circuit Court of Howard County, Indiana, in Probate Cause No. 2149 on the docket of said court, as trustee under the last will and testament of Isaac Wright, deceased. The trustee continued to function as such until the 11th day of October, 1933, when the Department of Financial Institutions for the State of Indiana closed the bank and placed it in liquidation. The department filed, in behalf of the bank, its final report as trustee of the Isaac Wright trust in the Howard Circuit Court on January 4, 1934, and Union Bank and Trust Company of Kokomo was, on or about January 24, 1934, appointed by the court as successor trustee. On May 25, 1934, the successor trustee filed exceptions to the said final report by the department in the Howard Circuit Court, on which exceptions judgment was rendered on June 27th, 1935, in favor of the trustee, this appellee, in the sum of One Hundred Thirty Thousand Dollars ($130,000.00). On July 15, 1935, the trustee filed a formal proof of claim in the liquidation proceedings of the Citizens State Bank pending in the Huntington Circuit Court, based on the judgment of the Howard

Circuit Court and asked that the same be formally filed and allowed. The Huntington Circuit Court, in the liquidation proceedings, fixed December 8, 1934, as the final date for filing claims. The department resisted the filing and formal allowance of the claim on the ground that the time during which it could have been filed under the statute had passed and that it was, therefore, barred.

On July 15, 1935, the Union Trust Company, as trustee for the Wright estate, filed its claim in the Huntington Circuit Court against the Citizens State Bank then in liquidation by the department, for $130,000.00. J. H. LeFavour, as special representative of the department and Citizens State Bank, filed a motion to strike out said claim which was overruled and then the department, by its special representative, filed answer in two paragraphs. The Union Bank and Trust Company filed its demurrer to second paragraph of answer which was sustained. An agreed statement of facts was filed in lieu of the evidence. There was a finding and judgment rendered by the Grant Superior Court, to which the case was venued, allowing the claim of $130,000.00. A motion for a new trial was filed and denied.

The appellant assigns as error: (a) the overruling of its motion to strike out the claim; (b) in sustaining appellee's demurrer to the second paragraph of answer of appellant; and, (c) in overruling its motion for a new trial.

The first paragraph of answer was a general denial and the second paragraph was predicated upon the fact that the claim was not filed on or prior to December 18, 1934, the date fixed for the filing of claims. The reasons assigned in the motion for a new trial are: (a) the finding of the court is contrary to law; and (b) is not sustained by sufficient evidence.

The question presented is whether the claim of $130,-000.00 was barred by reason of the fact that it was not

filed on or prior to December 8, 1934. The appellant and appellee have filed able and exhaustive briefs in which they have cited many cases to sustain their respective contentions. We think, however, a proper construction of the statute under which the proceeding is brought throws more light upon the question presented than the cases cited.

The legislature of 1933, passed an Act known as "The Indiana Financial Institutions Act." Chapter 40, p. 176, Acts of 1933. Article 2 of Part 2 of the Act relates to the liquidation of financial institutions and provides under certain conditions when the Department of Financial Institutions may take possessions and charge of financial institutions. Section 41, Acts 1933; §18-301 Burns 1933 (§7763 Baldwin's 1934), as amended by the Acts of 1935, p. 13. Section 57 of the Act of 1933, §18-317 Burns 1933 (§7779 Baldwin's 1934), as amended by the Acts of 1935, p. 18, is as follows:

Amendment—Sec. 57—Statement of Liabilities.

"Sec. 11. That section 57 of the above entitled act be amended to read as follows: Sec. 57. Upon order of the court, the department shall prepare, in triplicate, a complete statement of all debts and liabilities of such financial institution, setting forth the name and address of each creditor, and the nature and amount of each claim, as disclosed by the books of such financial institution, or otherwise coming to the knowledge of the department, and shall file one copy thereof in the office of the department and one copy thereof with the clerk of the court, together with the recommendations of the department as to the allowance or disallowance of such claims, but, in making such recommendations, the department shall not determine or recommend any preferences or priorities as to any claim or claims. For the purpose of enabling the department to determine the nature, amount and validity of any claim, the department may upon notice to any creditor, require such creditor to file with the department a verified proof of any claim asserted by him, within such time as may be fixed by the department.

Upon the filing of the statement of liabilities, the department may, by mail, notify each creditor whose name appears upon the statement, of the amount for which his claim was recommended for allowance, without priority, and shall, in such notice, fix a date, not less than thirty days from the date of such notice, within which all creditors who may be dissatisfied with the recommendations of the department as to the allowance or disallowance of claims, may appear in court, and, by petition, assert their claims or any priorities thereon. Upon the filing of the statement of liabilities with the clerk, the department shall give notice, by publication, once each week for three successive weeks, in some newspaper of general circulation, printed or circulated in the county where the liquidation proceedings are pending, that the statement of liabilities and the recommendations as to the allowance or disallowance of claims have been filed with the clerk of the court, and fixing a date, not less than thirty days after the date of the first publication of such notice, within which any creditors, shareholders, or other persons interested may appear and by petition filed in the court, assert any claims or priorities thereon or object to the allowances or disallowances recommended by the department. Within the time fixed by the notice, any creditor, shareholder or other person interested may by verified petition filed in the court, assert his claim, or any priority thereon, or oppose the allowance of any claims appearing upon the statement, or asserted by any other creditor, and the department, or any creditor, shareholder or other person interested, within such time as may be fixed by the court, may oppose the allowance with or without priority, of the claims asserted by any creditor or creditors. The court may, upon good cause shown, extend the time for the filing of such statement of liabilities by the department, and the time for filing any petition or objection by any person for the allowance or disallowance of any claim herein contemplated. Any creditor who fails to appear and file his petition, as above provided, within the time fixed by the notice or by any extension granted by the court, shall be forever barred from asserting any claim different from that recommended by the department, or from

asserting any claim to priority, and from contesting or opposing the allowance, with or without priority, of any claim asserted by any creditor."

It is to be noted that in the foregoing section it is said: "Upon order· of the court the department shall prepare . . . a complete statement of all debts and liabilities of such financial institution, setting forth the name and address of each creditor, and the nature and amount of each claim, as disclosed by the books of such financial institution, *or otherwise coming to the knowledge of the department . . . together with the recommendations* of the *department . . ."* (Our italics.) It is thus seen that it was the duty of the department to prepare a list of all debts and liabilities and the nature thereof of any and all claims coming to its knowledge. The language is broad and all inclusive. The Department, of course, had knowledge of the claim that was being asserted by the appellee in its exceptions filed to the final report. It was a party to the action and resisted the claim. It had full knowledge of its nature and the duty was enjoined by statute that it take notice of the claim and make recommendations as to its allowance or disallowance. Furthermore, as provided in said section:

"For the purpose of enabling the department to determine the nature, amount and validity of any claim, the department may upon notice to any creditor, require such creditor to file with the department a verified proof of any claim asserted by him, within such time as may be fixed by the department."

Here we find a provision whereby the department, when it has knowledge of a claim, can require the creditor to file with the department verified proof of any claim asserted by him. In the instant case this was not necessary for the reason that the department had knowledge of the nature of the claim asserted by appellee, but neither the appellant or appellee had knowledge of the

amount of the claim as it had not been determined by the court.

On the 4th day of January, 1934, the department, for and on behalf of the Citizens State Bank then in liquidation, filed in the Howard Circuit Court a final report and resignation in the trusteeship of Isaac Wright, deceased. On May 25, 1934, the Union Bank and Trust Company, as trustee, filed exceptions to the final report and resignation of the Citizens State Bank by the department. All of this was done long before the fixing of December 8, 1934, as the date for filing claims against the Citizens State Bank and the department had actual knowledge of the nature of the asserted claim.

It is also stated in said section,

"... and the Department, or any creditor, shareholder or other person interested, within such time as may be fixed by the court, may oppose the allowance, with or without priority, of the claims asserted by any creditor or creditors."

From the time exceptions were filed to the report of the Department it was opposing the claim of appellee with full knowledge of its nature, but not of the amount, if any, the court would finally allow. Nor did the appellee know the amount of the claim, if any, the court would allow and necessarily it could not file a claim for any specific amount, but under the circumstances was compelled to wait until the claim was finally adjudicated before a claim for any specific amount could be filed. The department, however, had knowledge of the fact that if any amount was finally allowed by the court it would be filed as a claim against the Citizens State Bank. Having this knowledge it was the duty of the department to list the claim and its nature. If this had been done all other creditors of the bank would have had knowledge of the fact the appellee was asserting a claim and of its nature. Of course, the same may be said of ap-

pellee if it had filed a claim. But does the fact that it did not file a claim when the same was in litigation under the facts as presented in the instant case bar the claim from being allowed at the time it was filed? We do not think so. The jurisdiction of the estate of Isaac Wright, deceased, was in the Howard Circuit Court, and it was this court that had jurisdiction to hear and adjudicate the exceptions filed to the final report. When the appellant filed a final report for the Citizens State Bank, as trustee under the last will and testament of Isaac Wright, deceased, and exceptions were filed by appellee, it then became the duty of the Howard Circuit Court to hear and finally adjudicate the matter as presented. This was done and when the court made its finding and rendered judgment in behalf of the appellee in the sum of $130,000.00, against the Citizens State Bank, the appellee filed a claim for said amount in the Huntington Circuit Court against the department as the liquidating agent of said bank. No claim for any known definite amount could have been filed in the liquidating proceedings of the Citizens State Bank in the Huntington Circuit Court prior to the finding and judgment of the Howard Circuit Court and the former court had no jurisdiction to determine the validity or amount of said claim.

The last clause of section 57 says:

> "Any creditor who fails to appear and file his petition, as above provided, within the time fixed by the notice, or by any extension granted by the court, shall be forever barred from asserting any claim different from that recommended by the department, or from asserting any claim to priority, and from contesting or opposing the allowance with or without priority, of any claim asserted by any creditor."

This provision does not, as appellant contends, absolutely bar a claim if not filed within the prescribed time. It only bars one from: (a) asserting a claim dif-

ferent from that recommended by the department; (b) from asserting any claim to priority; and, (c) from contesting or opposing the allowance, with or without priority, of any claim asserted by any creditor.

In the instant case the appellee is not asserting any claim different from that recommended by the department for none was recommended although it was the duty of the department to make a recommendation; the appellee is not asserting any claim to priority, nor opposing or contesting the allowance with or without priority of any claim asserted by any creditor. The appellee is merely asserting a claim that was in litigation and not determined in a court of competent jurisdiction when notice was given for the filing of claims. Before the final adjudication of the exceptions to the final report of the Citizens State Bank by the department the appellee had no claim which the law would have enforced and it can not be said to have been guilty of laches or negligence in failing to file a claim when it was not in the condition to be enforced. The appellee pursued the only course recognized by law to establish the validity of its claims by filing exceptions to the final report and having the same passed upon by the court which had jurisdiction to hear the matter. And it was only after the final adjudication of the exceptions to the report and the finding and judgment allowing $130,000.00 as a claim against the bank, and not before, that the appellee was prepared to present its claim to the Huntington Circuit Court in the liquidation proceedings of the bank by the department.

No injustice can be done any creditor of the bank to permit the claim to be filed and participate in the proceeds derived from the assets of the bank as other creditors. It may be that by recognition of the claim of $130,000.00 other creditors will not receive as great a dividend as they would otherwise have received, but this is no reason for refusing the claim. It was found to be a

just claim by the court and as far as the record shows, no appeal has been taken from its finding and judgment. Stipulation 16 of the parties shows that on the 28th day of August, 1935, the department paid to general creditors of the bank a dividend of 10% and on December 5, 1935, a dividend of 5%, and,

> "that there are ample funds and/or properties of the Citizens State Bank in liquidation, in the possession of the Department of Financial Institutions to pay dividends as above declared to Union Bank & Trust Company as Trustee under the last will and testament of Isaac Wright, deceased, on its judgment of one hundred thirty-thousand ($130,-000.00 dollars."

It may be said that as the appellee did not file the claim within the time allowed it should have secured an extension of time within which to have filed it. What purpose would this have served? The only purpose for an extension of time would have been to give the department notice that the appellee had a claim to file, and this knowledge the department already had as it was a party to the proceedings in the Howard Circuit Court where appellee was attempting to establish its claim.

We think it is clearly the purpose of section 57, *supra,* in fixing the time for filing claims, to expedite and wind up as speedily as possible the settlement of banks in liquidation and for this reason creditors are not permitted to be allowed to defeat the object of the Act by delay in filing their claims by being guilty of laches or negligence. It is certainly not the purpose of the Act to penalize one who has moved forward as speedily as possible in establishing a claim so that it might be filed as was done in the instant case. The section of the Act in question is not a strict statute of limitations in our judgment and was not intended to be so by the legislature. It should be given a liberal construction

to accomplish the purpose for which it was intended. The purpose of the Act was to provide a method for the equal distribution of the assets of an insolvent bank to all its creditors.

We think the case of *In Re Fagan* (1905), 140 Fed. 758, is particularly applicable in the instant case. This is a case where a referee disallowed a claim of the People's State Bank of Greenville against the estate of a bankrupt. Fagan, the bankrupt, within four months of the commencement of the proceedings in bankruptcy had sold a stock of goods, upon which the People's Bank had a mortgage for more than $2,000 to one Stradley for $3,500, and out of the purchase money paid the debt of the bank. The trustee began a suit in the state court against the bank to recover the money so paid on the grounds that it was a preferential payment and in violation of the bankruptcy law. The claim was first presented to the referee and then to the circuit judge and then taken to the Supreme Court of South Carolina where final judgment was rendered more than one year after the adjudication in bankruptcy. The bank, pursuant to the judgment, paid over to the trustee the amount received by it and within thirty days filed its claim with the referee to share with other creditors in the bankrupt estate. The referee refused to allow the claim because it had been filed more than one year after the adjudication and, as he insisted, was in violation of the terms of section 57n (Act July 1, 1898, Ch. 541, 11 U. S. C. A. §93 (n), U. S. Comp. St. 1901, p. 3444) which, as he claimed, were mandatory and prevented the allowance of a claim after the expiration of one year after adjudication. We quote at length what the court said upon this proposition (p. 760) :

"The Supreme Court of the United States has lately held, in *Keppel* v. *Tiffin Savings Bank*, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790, that:

The 'creditor of a bankrupt who has received a merely voidable preference, and who has in good faith retained such preference until deprived thereof by the judgment of a court upon a suit of the trustee, can thereafter prove the debt so voidably preferred.'

"Under that decision there can be no doubt, therefore, that the bank can lawfully prove its debt. Can this right be lost with one year after the adjudication in bankruptcy, as the referee has decided? Has the administration of the estate been hindered or delayed by its laches? Clearly not, because there was no estate in the hands of the trustee for distribution prior to the final judgment of the Supreme Court, and within 30 days thereafter its claim was submitted to the referee in due form. Prior to that judgment the bank had no claim which it could prove. Its debt had been paid, and it had no claim against the bankrupt estate. Shall it therefore be barred from any participation in the estate of the bankrupt because it has not done what it was impossible for it to do, to wit, prove a claim which did not exist. To refuse to allow the bank to prove its claim will be in effect to hold that it has forfeited all right to participate in the estate of the bankrupt, because it has litigated its rights to uphold the payment of its debt made prior to the adjudication. This the Supreme Court, in the Keppel Case, has held cannot be done; that it is the privilege of a citizen to submit his claims to judicial tribunals without subjecting himself to penalties of an extraordinary character; and that the right to prove its lawful claim against the bankrupt estate was not forfeited simply because it elected to put the trustee to proof in a court of the existence of the facts made essential by the law to an invalidation of the preference. That the debt due the bank is bona fide, and that it is a lawful claim against the bankrupt estate is undisputed, nor is it questioned that its litigation was in good faith.

"Such being the case, it seems to me that under the well-settled rule that so long as a fund is undistributed a court may allow a just claim to participate in the distribution, notwithstanding the fact that by its previous orders all claims were required

to be proved by a certain day or be barred, the bank ought to be allowed its pro rata share in the fund in the hands of the trustee. No laches can be imputed to it, for it proceeded without delay to make its claim after the final judgment, and its case, therefore, does not seem to me to be governed by the principle which controlled in the numerous cases cited by the referee, in all of which the creditors held to be barred had been guilty of some neglect in proving their claims, and were barred by the express limitations of section 57n. In this case the bank could not have proved its claim within the time limited without a surrender of rights upon which it was its privilege to ask the judgment of the court, and until the final adjudication of such rights it had no claim which it could present. The reasons for the rule requiring proofs of claims within 12 months failing, I am of the opinion that the rule itself fails, and section 57n, therefore, does not seem to me to be operative in this case. I have not been able to find any authorities to sustain this view, and this decision must therefore rest upon the general principle, which lies at the foundation of the bankruptcy act, that all creditors are entitled to share equally in the estates of bankrupts."

In the case of *In Re Coleman* v. *Titus Corporation* (1923), 286 Fed. 303, 304, the court said:

"Although the provisions of the statute ... which is a statute of limitations, require that claims must be filed within one year after adjudications, nevertheless the courts have endeavored to relieve claimants against the severity of this rule, and have mitigated it in favor of creditors who are not to blame for delay."

Also see *In Re Basha et al.* (Circuit Court of Appeals) (1912), 200 Fed 951. The case of *Powell* v. *Leavitt* (Circuit Court of Appeals) (1907), 150 Fed. 89, is cited by appellee. The appellant contends that this case is not applicable in the instant case. We think it is so. Powell held a note secured by mortgage on a stock of goods of the bankrupt, Noel. On August 18, 1904, Powell consented in writing to a sale of the property by the trustee. There-

after Powell brought a suit in the state court against the trustee to establish the validity of the mortgage. In October, 1905, the court found that the mortgage was a preference and invalid under the bankrupt act, and rendered judgment for the defendant.

On November 10, 1905, Powell offered his proof of debt in due form to the referee who denied the claim relying upon section 57n, *supra,* of the bankrupt act and so far as material to this case is as follows (p. 90) :

> " 'Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment'."

The court in its opinion said (p. 90) :

> "That a creditor whose claim was in litigation might, by an unqualified statute of limitations, be deprived of his just share of the bankrupt's estate, was the 'mischief felt,' the 'occasion and necessity' of the exception. To save the rights of such a creditor was 'the object and remedy in view,' and the intention of the Legislature is to be ascertained accordingly. 1 Kent Com. 462; 1 Plow 205; Potter's Dwarris, 194. We therefore interpret the exception as if it read: 'If the final judgment therein is rendered within thirty days before the expiration of such time, or at any time thereafter.' We have to determine if the proceeding here had in the state court was a liquidation by litigation of the creditor's claim within the meaning of the bankrupt act. . . . The phrase 'liquidated by litigation' is general, and the object of the exception which is made to the statutory limit of time is plainly to allow the proof a claim after the expiration of a year by a creditor who during that time was engaged in litigation with the bankrupt's estate concerning its liability to him. . . . It may be that, pending the litigation, he could have proved his claim in bankruptcy as a secure claim, leaving his proof to be amended, in case his mortgage was avoided. . .But to

prove during the litigation a claim which can not be allowed unless the creditor fails in the litigation is but an empty formality. . . . Notice of the claim is given effect by the litigation, and, if the preferred creditor is not to be deprived of his proof altogether, there seems no good reason why he should not offer it immediately after the litigation is ended. The substantial amount of Powell's claim, the amount for which he could seek allowance and upon which he could demand a dividend, here remained uncertain until the validity of the mortgage had been settled."

So in the instant case when exceptions were filed by appellee to the final report of appellant as the liquidating agent of the bank, notice of the claim was effectively given the department and it was then its duty to take notice of the claim and set forth its nature the same as if it had been disclosed by the books of the bank. No better or greater notice could have been given the department or creditors than the exceptions filed to the final report. And the fact that the Act specifically provides that the time for filing any petition or objection by any person for the allowance or disallowance of any claim may be extended by the court lends strong support to the theory that it was not intended as a strict statute of limitations and should not be used as such under the peculiar circumstances as presented in the instant case.

Under the facts and circumstances presented in the instant case we are of the opinion that the claim of appellee of $130,000.00 against the Citizens State Bank is not barred from participating in the assets of said bank and now in liquidation by the Department of Financial Institutions.

Finding no available error the judgment is affirmed.